**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| AVD BELLMONT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number _____ |
| | ) | |
| DANIEL LOWE, | ) | |
| LEGACY VENTURE WEST II, LLC, | ) | |
| VENTURE WEST II, LC, | ) | |
| LEGACY SHAWNEE, LLC, | ) | |
| VENTURE WEST DEVELOPMENT, LLC, | ) | |
| LEGACY OC, LLC, | ) | |
| VENTURE WEST III DEVELOPMENT, L.L.C. | ) | |
| VENTURE WEST DEVELOPMENT III, LLC, | ) | |
| RICHARD B. KATZ, | ) | |
| SANDBERG PHOENIX VON GONTARD, P.C., | ) | |
| THE KATZ LAW FIRM, L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

**COMES NOW** plaintiff AVD Bellmont LLC ("AVD"), by and through its attorneys, and

for its causes of action against defendants states and alleges as follows:

### Parties

1.      Plaintiff AVD Bellmont LLC ("AVD") is a limited liability company, organized

and existing pursuant to the laws of Kansas with its principal place of business in the state of

Kansas.

2.      Defendant Daniel Lowe ("Lowe") is an individual resident of the state of Kansas.

3.      Defendant Legacy Venture West II, LLC ("LVW") is a purported Missouri

limited liability company with its principal place of business in the state of Missouri; however

the Missouri Secretary of State has no record of any such entity.

4.    Defendant Venture West II, LC ("VW") is a limited liability company, organized and existing pursuant to the laws of Missouri with its principal place of business in the state of Missouri.   It is AVD's belief that any reference to LVW in the subject transaction detailed herein was meant to be to VW and, as such, for the purposes of this filing, VW shall be used to refer to both VW and LVW as one and the same.

5.    Defendant Legacy Shawnee, LLC ("Legacy Shawnee") is a limited liability company, organized and existing pursuant to the laws of Kansas with its principal business operations in the state of Kansas.

6.    Defendant Venture West Development, L.L.C. ("VWD") is a limited liability company, organized and existing pursuant to the laws of Kansas with its principal business operations in the state of Kansas.

7.    Defendant Legacy OC, LLC ("Legacy OC") is a limited liability company, organized and existing pursuant to the laws of Kansas with its principal business operations in the state of Kansas.

8.    Defendant Venture West III Development, LLC ("VW III") is a purported limited liability company with its principal place of business in the state of Missouri; however the Missouri Secretary of State has no record of any such entity.

9.    Defendant Venture West Development III, LLC ("VWD III") is a limited liability company, organized and existing pursuant to the laws of Kansas with its principal business operations in the state of Kansas.

10.    Defendants LVW, VW, Legacy Shawnee, VWD, Legacy OC, VW III and VWD III are sometimes collectively referred to herein as the "Lowe Entities."

11.     Defendant Richard B. Katz ("Katz") is an individual resident of the state of Kansas.

12.     Defendant Sandberg Phoenix & von Gontard, P.C. ("SPvG") is a professional corporation formed for the practice of law organized and existing pursuant to the laws with its principal place of business in the state of Missouri.

13.     Defendant The Katz Law Firm, L.C. ("KL") is a professional corporation formed for the practice of law organized and existing pursuant to the laws of Kansas with its principal business operations in the state of Kansas.

14.     At all times relevant hereto, Katz was and is an attorney licensed to practice law in the states of Kansas and Missouri, and represented Lowe and his companies, specifically including but not limited to the subject transactions with AVD.

15.     During the time that AVD was solicited to make the subject investment, Katz was employed or otherwise associated with SPvG.

16.     At some point in time before the filing of this action, Katz left employment with SPvG.   From that time through the present Katz operates his law practice under KL.

**Jurisdiction and Venue**

17.     Jurisdiction exists in this Court in that this case arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. §1331.   This case alleges non-frivolous, material federal questions that give rise to subject matter jurisdiction.   "When it comes to invoking federal question jurisdiction, the bar is low. The district court generally has jurisdiction over a claim "arising under" federal law.   *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 681 (7th Cir. 2014)(citing to 28 U.S.C. § 1331; *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 163 (1997)).   The federal laws under which the main claim in this case

arises are a direct and essential element of AVD's claim for relief.   *See Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 89 (1998); *Phillips Petroleum Co. v. Texaco Inc.*, 415 U.S. 125, 127 (1974).

18.     Personal jurisdiction over defendants exist in this Court in that defendants (i) transacted business within the state of Kansas; (ii) entered into an express or implied contract, by mail or otherwise, with a resident of the state of Kansas to be performed in whole or in part by either party in such state; and (iii) commission of a tortious act within the state of Kansas.

19.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (c) in that AVD resides in this judicial district, and its claims against defendants arose in this judicial district.

## Solicitation of and Sale of Securities to AVD

20.     In early December 2018, Lowe pitched an investment opportunity to a member of AVD regarding a development to be done in Shawnee, Kansas.   In an email Lowe sent on December 8, 2018, he represented that this investment had "[n]o downside but nice upside in this structure."

21.     On or about December 27, 2018, defendant VW (by Lowe as its Manager) and AVD executed and delivered a certain Purchase Agreement for Interest in Legacy Shawnee, LLC ("Purchase Agreement"), a copy of which is attached hereto as *Exhibit 1*.   The Purchase Agreement provides for the investment by AVD of Seven Hundred Fifty Thousand Dollars ($750,000) in consideration for the sale to it of a fifteen percent (15%) interest in Legacy Shawnee purportedly owned by VW.

22.     The Purchase Agreement provided that the funds investment by AVD were to be wired to an account owned by VWD, owned by VW, and that the funds would be "contributed"

to Legacy Shawnee upon the approval of Legacy Shawnee's Operating Agreement by a certain Steve Beaumont (or a substitute project as later provided in the Purchase Agreement).

23.     The Purchase Agreement provided that in the event that the Operating Agreement of Legacy Shawnee is not fully executed within a set time frame, then within two (2) years thereafter VW would transfer to AVD a membership interest in another similar development entity defined as the "Substitute Project" and provided for the computation of the interest to be transferred, based upon the funds invested by AVD plus an eight percent (8%) return.

24.     The Purchase Agreement recites that the "Securities" are not registered and goes on further with references to the federal securities laws and that the investment is subject to those laws.   "Securities" means the investment made by AVD in consideration of the membership interest to be transferred to it.

25.     The Purchase Agreement at Section 11 makes a specific representation that:

> To the knowledge of [VW] and [Legacy Shawnee], there is no pending action, arbitration, audit, hearing, investigation, litigation, suit (whether civil, criminal, administrative, investigative, or informal (each, a "Proceeding") that has been commenced against Seller or the Company that challenges, or may have the effect of preventing, delaying, making illegal, or otherwise interfering with, any of the transactions contemplated by this Agreement.

26.     As detailed below, that representation was false when made and remains false at the present.

27.     On or about January 27, 2020, VW, Lowe personally, and AVD executed and delivered a certain Amendment to Purchase Agreement for Interest in Legacy Shawnee, LLC ("First Amendment"), a copy of which is attached hereto as *Exhibit 2*.   The First Amendment recites that VW failed to transfer any interest to AVD in Legacy Shawnee, and that Legacy Shawnee failed to acquire its contemplated interest in a certain development project.

28.     The purpose of the First Amendment was to recognize the intent of the parties with regard to the subject development project, and that VW would fully perform its obligations under the Purchase Agreement no later than the next business day after VW, Lowe, or any other entity in which Lowe has an ownership interest, acquires title to the subject development project.

29.     On February 9, 2020, in an effort to give reassurance to AVD, Lowe provided a personal financial statement dated June 30, 2019, to one of AVD's members which did not disclose any of the pending or concluded litigation matters discussed below which should have been reflected as liabilities on that financial statement, but which were not.   As such, this was a material misrepresentation by Lowe to induce AVD to trust him and remain in the investment without challenge or seek immediate repayment of AVD's investment.

30.     On or about December 30, 2020, VW, Lowe personally, and AVD executed and delivered a certain Second Amendment to Purchase Agreement ("Second Amendment"), a copy of which is attached hereto as ***Exhibit 3***.   The Second Amendment recites that the Legacy Shawnee Operating Agreement had not been fully executed as required, and that the parties jointly were agreeing to extend until March 30, 2022 for AVD to opt into a Substitute Project pursuant to the Purchase Agreement and that VW would effect that transfer within thirty (30) days of receiving AVD's notice in that regard.

### Offer of Substitute Project

31.     After months of little or no information regarding the status of the Legacy Shawnee project despite multiple, repeated requests for the same, on August 30, 2021, Lowe had a telephone conference with AVD, and Lowe confirmed that the project contemplated for Legacy Shawnee was unsalvageable, as the necessary real property was not secured, and there was no funding established for the project.   The parties discussed AVD obtaining a membership interest

6

in Lowe's entity or entities developing a project known as the Overland Crossing Project as a

Substitute Project.

32.      On September 1, 2021, AVD served its demand upon Lowe and VW, a copy of

which is attached hereto as ***Exhibit 4***, demanding either the return of the investment with interest

or being provided a membership interest in Legacy OC, LLC (Lowe's entity which he had

represented owned the Overland Crossing Project) by September 10, 2021.

33.      Lowe and VW failed to respond by that date.

34.      Finally, on the evening of September 14, 2021, Lowe and AVD had a telephone

conference to discuss the matter.   During that call, Lowe and VW offered to transfer a

membership interest in Legacy OC, LLC, an entity owned and controlled by Lowe, which entity

owed the Overland Crossing Project, as the Substitute Project.

35.      On or about September 17, 2021, AVD communicated to Lowe its confirmation

of that offer, and reiterated AVD's understanding that it would either receive a ten percent (10%)

interest in the Overland Crossing Project or return of AVD's investment with interest at eight

percent (8%), whichever is higher.   Lowe responded within two minutes of that communication

that Katz had completed the document to memorialize that agreement and would send it to AVD

the next morning.

36.      On September 21, 2021 Lowe sent a certain Membership Interest Purchase

Agreement ("Membership Interest Purchase Agreement") prepared by Katz, a copy of which is

attached hereto as ***Exhibit 5***, purporting to reflect the sale of a membership interest in Legacy

OC to AVD.

37.     The Membership Interest Purchase Agreement recites the failures of the Legacy Shawnee project, and the substitution of a ten percent (10%) interest in Legacy OC as the Substitute Project.

38.     The Membership Interest Purchase Agreement recites that VW III owns "Seventy percent (85%) of the membership interests in Legacy OC; however, there is no such legal entity as VW III.   It is likely that, just as with the typographical error as to what is percentage ownership, AVD believes that Lowe and Katz intended to state that VWD III was the owner of such membership interest, though actual proof of any ownership has never been provided to AVD.

39.     Representations are made in Section 3 of the Membership Interest Purchase Agreement similar to those made before, and of particular relevance to this action are the following representations made by VW III [VWD III] and Legacy OC:

> 3.1.     Organization, Standing and Capitalization. Company is a Limited Liability Company duly organized, validly existing and in good standing under the laws of the State of Kansas and has all requisite power and authority to carry on its business as proposed to be conducted and to sell the Company Interest to Investor. This Agreement is a valid and binding obligation of Company.
>
> 3.2.     Membership Interest.   Venture West III Development, LLC has the absolute right to sell, transfer, assign, convey, and deliver the Company Interest to the Investor in accordance with the terms and provisions of this Agreement, and the Company Interests are free and clear of all liens or encumbrances of any kind or nature. The Membership Interest will be as above stated of the membership interest of the Company as of the Closing Date.

40.     As detailed below, those representation was false when made and remains false at the present.

41.     Representations which Lowe sought AVD to make in Section 4 of the

Membership Interest Purchase Agreement, which were not true and so could not be made by

AVD, were:

> 4.3.    Access to Information. Investor (or any of the Investor's professional
> advisers) have been provided an opportunity to ask questions of, and Investor has
> received answers thereto that are satisfactory to Investor from, Company and its
> representatives and the Seller regarding Company, the terms and conditions of
> this Agreement, and the terms and conditions of the Standard Operating
> Agreement, and other matters pertaining to this investment, and all additional
> information requested by Investor of Company and/or the Seller.

42.     As detailed below, those representation was false when made and remains false at

the present.

43.      The Membership Interest Purchase Agreement, like the Purchase Agreement,

recognized that the investment was in securities and that federal securities laws were applicable.

44.     Section 4.6 of the Membership Interest Purchase Agreement addressed potential

conflicts with regard to Katz, and showed that by this time Katz was no longer affiliated with

SPvG, but was now practicing through his own practice, KL.

45.     Representations are made in Section 5 of the Membership Interest Purchase

Agreement similar to those made before, and of particular relevance to this action are the

following representations made by VW III [VWD III] and Legacy OC:

> 5.3.    Ownership of Seller Membership Interest.   Seller is the sole owner of the
> Company Interest. Seller has the absolute right to sell and transfer the Company
> Interest to Investor, and the Company Interest are free and clear of all liens or
> encumbrances of any kind or nature. There are no outstanding subscriptions,
> warrants, calls, commitments, pledges, security agreements, restrictions against
> transfer, or arrangements of any kind with respect to the sale and transfer by
> Seller to Investor of the Membership Interest.
>
> 5.4.    Consents.   The execution, delivery and performance of this Agreement by
> the Company and the Seller does not require the consent of any third party,

9

whether under the Articles of Organization, or any agreement by which either of them are bound, or otherwise.

5.5.    Authority.   The Company and the Seller each has the full capacity, power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement.   This Agreement constitutes the legal, valid and binding obligation of the Company and the Seller, enforceable against the Company and the Seller in accordance with its terms, except to the extent (i) such enforceability is limited by bankruptcy, insolvency, reorganization, fraudulent conveyance, moratorium, or other similar laws relating to or affecting generally the enforcement of creditors, rights, and (ii) the availability of the remedy of specific performance or injunctive or other equitable relief is subject to the discretion of the court before which any proceeding therefore may be brought.

5.6.    Compliance with Laws and Other Instruments.   The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby in accordance with the terms of this Agreement, and the performance of the Company's and the Seller's obligations hereunder will not conflict with, or result in any violation of or default under, any agreement or other instrument to which the Company, the Seller or   Company is a party or bound or any permit, franchise, judgment, decree, statute, rule or regulation applicable to the Company or Seller.

5.7.    Certain Proceedings.   To the knowledge of Seller and the Company, there is no pending action, arbitration, audit, hearing, investigation, litigation, or suit (whether civil, criminal, administrative, investigative, or informal) (each, a "Proceeding") that has been commenced against Seller or the Company that challenges, or may have the effect of preventing, delaying, making illegal, or otherwise interfering with, any of the transactions contemplated by this Agreement.

5.8.    Ownership of LLC.   Venture West III Development, LLC is the sole and only owner of the Membership Interests and such Membership Interests are free and clear of all liens, encumbrances, assignments, and pledges. Seller is currently the Manager of Company which owns the Property.

46.    As detailed below, those representation was false when made and remains false at the present.

47.    Exhibit A to the Membership Interest Purchase Agreement is the Amended and Restated Operating Agreement of Legacy OC.

a.     When AVD received this document and began to review and question some of its provisions, the wrongful acts of Lowe and the Lowe Entities became more evident.

b.     This Operating Agreement did not reflect the terms and conditions which were promised and represented to AVD.

c.     The Manager of Legacy OC under the Operating Agreement is VW III, which is not even a legally formed entity, and the provision stated that it "may not be removed under any condition," which based upon Lowe's track record as AVD has discovered, was completely unreasonable and would allow Lowe to operate his schemes without question.

d.     Section 11.14 of the Operating Agreement contains a provision advising of Katz's role in representing Lowe and his many entities, but goes on to disclose that Katz personally also had other roles and ownership interests with Lowe and his many entities when it stated:

> … and Richard B. Katz as a Member and his related entities or Trusts, potential conflicts of interest may exist now or in the future between the interests of the other Members and those of the Company, Lowe or Katz and any Member, Lowe and the Company.   The Members are specifically advised that the interest held by Katz is also a potential Conflict of Interest as Katz may favor his own interest either intentionally or unintentionally.

48.     This provision highlights Katz's integral role (individually, and under the umbrella of SPvG and KL) in the establishment, operation and actions of all of the Lowe Entities and a plethora of other entities in the states of Kansas, Missouri and in other jurisdictions to solicit investments and operate schemes to obtain funds from third-party investors which were used for other purposes not disclosed to such investors, including AVD, and specifically used for

purposes other than that for which the investment was solicited, all in violation of federal and state laws.

49.     Lowe was and is the sole or majority owner of the Lowe Entities, and controls or controlled each of them, with the assistance of Katz, KL and SPvG.

50.     After concerns kept growing without any substantive answers from Lowe, Katz or any of the Lowe Entities, AVD  began to look a little deeper into Lowe and his dealings.   AVD has uncovered a long and substantial history of real estate projects with solicitations of investments from third-parties based upon misrepresentations and fraudulent inducements, failures of projects, and litigation in many state and federal courts.

51.     None of these matters were ever disclosed to AVD, and in fact the misrepresentations identified above were made to lead AVD away from the truths, and the many legal actions, many of which had already been reduced to judgments, which unquestionably affected Lowe and the Lowe Entities, and adversely impacted their ability to perform under the subject agreements with AVD.

52.     Many of these legal actions were in full swing during the time that AVD was solicited for its investment and thereafter while Lowe, Katz and the Lowe Entities continued to assure AVD that its investment was safe and would be either timely repaid or AVD would be put in a legitimate substitute project as AVD believed it had contracted to receive.

53.     As a result of research conducted by AVD, the following information has been discovered, all of which would have been material to the investment decision AVD made and its decision to accept the excuses of Lowe and the Lowe Entities regarding the subject project and the prospects of being paid on its investment:

        a.     Less than two years before AVD made its investment, Lowe and certain of

his companies was sued in the United States District Court, Western District of Missouri in a case styled as ***S.V.O. Bettis, LLC v. Dan Lowe, Legacy Venture West Development, LLC and RED Walnut, LLC***, Case Number 16-CV-01278.

(1) This case was filed on December 7, 2016.   Lowe solicited an investment of $250,000 for a development referred to as the Truman's Market Grandview Project.   Lowe used a document entitled a Note Purchase Agreement to memorialize the investment.   This document is very similar to the promissory notes and the Membership Interest Purchase and Sale Agreement used with AVD. All of these documents were drafted by Katz.

(2) The investment in this matter was made on August 23, 2012.   It was determined that most if not all of the invested funds were used by Lowe to pay expenses unrelated to the project in which the funds were to be used.   The project failed just as the project for AVD failed.   Despite the plaintiff's attempt to find out more information which was promised by Lowe, Lowe never provided promised information.   The plaintiff held off pursing legal action relying on Lowe's promises of repayment, and finally filed suit in 2016.   The lawsuit stated claims for securities fraud (both Federal 10b-5 and state law claims), fraud, conversion and breach of contract.

(3) The case was dismissed by agreement on August 31, 2018, after the dispute was apparently settled – just a few months before Lowe solicited the subject investment from AVD.

b.      On January 20, 2017, Lowe and one of his companies was sued in the Circuit Court of Jackson County, Missouri, in a case styled as ***BVSEF III Legends, LLC***

13

***v. Venture West II, LLC and Dan Lowe***, Case Number 1716-CV01792.   This case was dismissed by the parties on August 31, 2018, apparently due to a settlement.   The source of funds for any settlement is unknown.

        c.      On November 20, 2017, suit was brought in the Circuit Court of Jackson County, Missouri, styled as ***David Hulshof, REDCA Holdings, LLC, James Gould Venture Group VI, LLC v. Legacy Truman, LLC, Legacy Venture West Development, LLC, DHL, LLC, Red Walnut, LLC and Dan Lowe***, Missouri, Case Number 1716-VCV28570.

        (1) The basis of the suit was related to the same investment which caused the S.V.O. case discussed above to be filed, and the parties in this case are related to those in the S.V.O. case.

        (2) The case was dismissed by the parties on September 11, 2018, apparently due to a settlement.   The source of funds for any settlement is unknown.

        d.      On February 2, 2018, suit was filed in the Circuit Court of Jackson County, Missouri, styled as ***VC Associates, LLC, 46 PC Investors, LLC, BFPC, LLC, BKPC, LLC v. Dan Lowe, Venture West II, LC, Seventh Church of Christ***, Case Number 1816-CV02974.

        (1) This case was pending when the AVD investment was solicited, but never disclosed to AVD.

        (2) <u>This liability of Lowe and VW was not reflected on Lowe's personal financial statement dated June 30, 2019 and provided to AVD on February 9, 2020</u>.

(3) The case was dismissed by the parties on May 12, 2020, apparently due to a settlement.   The source of funds for any settlement is unknown.

e.        On October 8, 2018, suit was filed in the Circuit Court of Jackson County, Missouri, styled as ***James Sides v. Legacy Venture West Development, LLC and Daniel Lowe,*** Case Number 1816-CV26595.

(1) Mr. Sides was a highly paid employee of Lowe, tasked with raising capital for Lowe's projects – like the Legacy Shawnee project for which AVD's investment was solicited.

(2) The petition filed relates that Lowe has failed to repay loans from an investor that Sides had solicited for $1,000,000.   He also states that he entered into other investments with Lowe.   He further states that Lowe admitted addition to opioids, other drugs and alcohol.

(3) Sides relates that Lowe made numerous false and misleading statements to lenders and investors, and that Lowe inflated reports of his assets in order to secure loans.

(4) He further states that Lowe takes funds from one project to fund others without disclosing that fact to any of the investors.

(5) This liability of Lowe was not reflected on Lowe's personal financial statement dated June 30, 2019 and provided to AVD on February 9, 2020.

(6) Lowe's pleadings only make general rote denials of the allegations against him.

(7) This case is still pending at this time.   Jury trial is set to begin on June 21, 2022.

0 of 35

f.      In early to mid-2019 Lowe and VW was sued in the District Court of Wyandotte County, Kansas, in a case styled as ***KKR Legends, LLC v. Venture West II, LLC and Daniel H. Lowe***, Case Number 2019-CV-000756.

(1)   This liability of Lowe and VW was not reflected on Lowe's personal financial statement dated June 30, 2019 and provided to AVD on February 9, 2020.

(2) A Consent Judgment was entered on August 26, 2019 for $1,702,219.12.

(3) It appears that it was resolved, as a Satisfaction of Judgment was filed on December 6, 2019.   The source of the funds to satisfy the judgment are unknown.

g.      On June 12, 2020 Legacy Hutto, LLC, another entity owned and controlled by Lowe, filed a legal action against the City of Hutto, Texas as a result of a failed development project, in the 395th Judicial District Court of Williamson County, Texas styled as ***Legacy Hutto, LLC v. City of Hutto, Texas, et al.***, case number 20-0863-C395.

(1) The gravamen of that action was the alleged breach of contract by Hutto, Texas, primarily in that Hutto did not properly arrange for financing including the issuance of bonds and the project could not proceed.

(2) On April 16, 2021, the District Court entered an order granting the City of Hutto's motion to dismiss the case, but also ordered that Legacy Hutto could amend its pleadings to address perceived shortcomings.   Apparently on that same date the City of Hutto appealed the order.   On April 29, 2021, Legacy

Hutto filed its amended pleading and shortly thereafter filed its own notice of appeal of the order.

(3) The case is presently with the Seventh Court of Appeals in Amarillo, Texas, now styled as *City of Hutto, Texas, et al. v. Legacy Hutto, LLC*, case number 07-21-00089-CV.   The parties have submitted their briefs and on February 9, 2022 the Court of Appeals submitted the matter without oral argument for decision, which remains pending as of the date of filing of this Complaint.

(4) Another investor solicited by Lowe and the Lowe Entities is in involved in that project which will be the subject of legal action to recover the investment from Lowe and the Lowe Entities based upon similar legal bases as in this case.

h.      On February 7, 2020 Lowe was sued in the United States District Court, District of Kansas, in a case styled as *Helmer W. Oberg and Kathy Lindsey as trustee of the Jeff Oberg Insurance Trust v. Daniel H. Lowe*, Case Number 20-CV-02055.

(1) Lowe solicited an investment with regard to a project referred to as Liberty Commons.   Promissory notes were used to memorialize the investments made.   The investment solicited from Oberg was for $849,637.   Lowe issued Oberg a promissory note on February 16, 2019 in that amount.   Lowe also solicited further investment of $473,113 from the Oberg Trust, which was memorialized by a promissory note dated February 16, 2019.   Both notes were due upon the sale of an outparcel in that project, and if the sale did not occur earlier, they were due and payable on September 15, 2019.   This mimics the

<u>format of terms of the subject notes issued to AVD</u>.

(2) Lowe defaulted on both notes without any payments being made. Notice of default was served on October 16, 2019.

(3) Lowe confessed judgment on the notes, and judgment was entered on July 15, 2020 for $1,535,944.44.   This was less than five months from getting more than $1,000,000 from AVD, and never disclosed.

(4) The Obergs aggressively sought to execute on the judgment, including against multiple investment entities owned and/or controlled by Lowe, none of which are involved with the AVD dispute.   The Obergs have sought to take Lowe's deposition for purposes of a debtor's examination on several occasions, but it has been continued each time, and is now presently set for April 26, 2022.

(5) According to the most recent filings in that case, <u>nothing has been paid or recovered despite extensive efforts at collection, and Lowe remains indebted in an amount now exceeding $2 Million, and interest accrues at a rate of $606.63 per day</u>.

(6) <u>This liability of Lowe was not reflected on Lowe's personal financial statement dated June 30, 2019 and provided to AVD on February 9, 2020</u>.

(7) Clearly if Lowe cannot pay this debt, he could not pay the debt owed AVD which he continually represented would be paid.

i.      On August 25, 2021, suit was filed in the Circuit Court of Jackson County, Missouri, styled as ***Country Club Plaza JV LLC v. Legacy Venture West Development LLC***, Case Number 2116-CV18826.

(1) The case was brought for unpaid rent for Lowe's headquarters for all

of his companies.

(2) The case was dismissed on October 20, 2021, without prejudice, though it appears that the dispute still exists.

j.      On February 5, 2021, suit was filed in the United States District Court, Southern District of New York, styled as ***Hoguet Newman Regal & Kenney, LLP v. Dan Lowe***, Case Number 21-CV-01048.

(1) The plaintiff is a law firm that Lowe had hired to represent him, Venture West Development, LLC and Venture II, LLC in a dispute in Dallas, Texas with a former business partner regarding a development or developments, though which developments are not known at this time.

(2) Lowe paid a retainer of $25,000 on January 11, 2020, and was thereafter billed for fees and expenses and owes a principal balance of $128,862.84 as of May 18, 2020.   Lowe has not made any payments on the fees and expenses other than the original retainer.

(3) Lowe was served with process but has failed to respond, and a default judgment was entered on December 13, 2021 as to liability, with the magistrate directed to determine the final amounts owed, which remains pending at this time.

k.      On December 16, 2021, an action to confirm an arbitration award against Lowe was filed in the United States District Court, District of Kansas, styled as ***TI Education Services LTD. v. Daniel Lowe***, Case Number 21-MC-00216.

(1) The arbitration had been commenced on January 20, 2021, and an award was entered against Lowe on September 23, 2021 in the principal amount of $115,237.73, plus legal fees and costs exceeding $70,000.

(2) Lowe failed to respond, as is his normal pattern in many cases, and a motion for default was filed on February 2, 2022.

(3) Judgment was entered on March 16, 2022 against Lowe in the amount stated above.

l.      On January 5, 2022, suit was filed against multiple Lowe companies in the District Court of Johnson County, Kansas, styled as ***Olsson, Inc. v. Venture West II, LC, Venture West Development III, LLC and Venture West Development, L.L.C.***, Case Number 22LA00083.

(1) This case was filed due to non-payment for services performed for another Lowe project which is also the subject of investor litigation involving some related parties to this instant action, seeking $40,212.62.

(2) The case was dismissed apparently due to settlement on January 11, 2022.   The source of funds for that payment are unknown.

54.      As evidenced by Lowe's history and that of his many entities, and facts dating back to the date that AVD was solicited for an investment to the present, Lowe, the Lowe Entities, Katz, KL and SPvG have made material misrepresentations of material facts to AVD, and have failed to disclose material facts to AVD, all of upon which AVD reasonably relied, leading to the damages it has suffered at the hands of the defendants.

55.      Each of Katz, KL and SPvG were employees or otherwise associated with, and all materially aided the conduct of Lowe and the Lowe Entities, giving rise to the liability to AVD.

56.      Katz has been intimately involved in all of the subject investments mentioned in this Complaint, has represented Lowe and his many entities therein.   A further fact of note to illustrate the conspiracy and relationship of Katz with the Lowe Entities is seen in Section 10 of

the Membership Interest Purchase Agreement where Katz's and KL's address is listed as that of Lowe and the Lowe Entities, not the address which Katz and KL shows on KL's filings with the Kansas Secretary of State or that Katz provides to the Kansas Supreme Court as his business address.

57.     Lowe and Legacy Shawnee have not repaid AVD its investment with interest or put AVD in a suitable substitute project in breach of the Purchase Agreement, First Amendment, Second Amendment and the Membership Interest Purchase Agreement.

58.     Upon information and belief, the funds from the investment made by AVD were not in whole or in part used for the represented project, but were used by defendants for other projects and/or purposes in violation of the party's agreements, without disclosure to AVD and without AVD's knowledge or consent.

59.     Lowe, the Lowe Entities, Katz, KL and SPvG misrepresented to AVD at many multiple times after the investment was made until as recently as just a short time before the filing of this Complaint, that the investment was safe, that there was "no downside" that there was only an "upside" and that it would be either repaid timely or AVD would be given an ownership interest in a suitable substitute project.

60.     Low, the Lowe Entities, Katz, LD and SPvG failed to disclose to AVD material facts commencing when the investment was first solicited until the present which had AVD known of them would not have made the investment in the first place, or when the facts would have been made known to AVD, AVD could have taken action to recover its investment rather than being seduced into taking no action and now has lost its investment completely.   Those facts not disclosed, some as set out above, included but are not limited to:

a.  The failure of Lowe and the Lowe Entities to secure the land and leases necessary for the Legacy Shawnee project to proceed;

b.  The many litigation matters involving the defendants and the liabilities of the defendants thereunder;

c.  The allegations of fraud and other wrongful acts made by other investors from whom defendants had solicited investments much like the fraud and wrongful acts that AVD believes defendants have occasioned upon it; and

d.  The false representation of the financial solidity of Lowe and his many entities, and the failure to disclose alleged and adjudicated liabilities when Lowe provided his personal financial statement to AVD.

**Count I**
**Violation of Section 10(b) of the Securities Exchange Act of 1934**

**COMES NOW** AVD**,** by and through its attorneys, and for Count I of its causes of action against all defendants, jointly and severally, states and alleges as follows:

61.  AVD incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 60 hereof, inclusive.

62.  Section 10 of the Securities Exchange Act of 1934 provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange
…
(b)  To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement… any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 USC § 78j(b).

63.     The Securities Exchange Commission has promulgated such a rule, which

provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means
or instrumentality of interstate commerce, or of the mails or of any facility of any
national securities exchange,

(a)     To employ any device, scheme, or artifice to defraud,

(b)     To make any untrue statement of a material fact or to omit to state
a material fact necessary in order to make the statements made, in the light
of the circumstances under which they were made, not misleading, or

(c)     To engage in any act, practice, or course of business which
operates or would operate as a fraud or deceit upon any person

in connection with the purchase or sale of any security.

SEC Manipulative and Deceptive Devices and Contrivances Rule, 17 C.F.R. § 240.10b-5.

64.     Section 3 of the Securities Exchange Act of 1934 defines a "security" as

follows:

(10) The term ''security'' means any note, stock, treasury stock, security future,
security-based swap, bond, debenture, certificate of interest or participation in any
profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any
collateral-trust certificate, preorganization certificate or subscription, transferable
share, investment contract, voting- trust certificate, certificate of deposit for a
security, any put, call, straddle, option, or privilege on any security, certificate of
deposit, or group or index of securities (including any interest therein or based on
the value thereof), or any put, call, straddle, option, or privilege entered into on a
national securities ex- change relating to foreign currency, or in general, any
instrument commonly known as a ''security''; or any certificate of interest or
participation in, temporary or interim certificate for, receipt for, or warrant or
right to subscribe to or purchase, any of the foregoing; but shall not include
currency or any note, draft, bill of exchange, or banker's acceptance which has a
maturity at the time of issuance of not exceeding nine months, exclusive of days
of grace, or any renewal thereof the maturity of which is likewise limited.

15 USC § 78(c).

65.     The transactions embodied by the Purchase Agreement, First Amendment, Second Amendment and Membership Interest Purchase Agreement constitute the sale of a "security" as that term is defined in the Securities Exchange Act of 1934.

66.     As alleged in this Complaint, defendants have employed a device, scheme, or artifice to defraud AVD.

67.      As alleged in this Complaint in detail, defendants have made multiple false statement and omissions of material facts.

68.     As stated in this Complaint, defendants have engaged in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person, being AVD.

69.     The (i) employment of a device, scheme or artifice to defraud AVD, (ii) false statements and omissions of material fact, and (iii) acts, practices and course of business that operates as a fraud or deceit upon AVD, all were intentionally done by defendants with the specific intent to deceive, manipulate and defraud AVD.

70.     AVD justifiably relied on those false statements and omissions of material fact.

71.     AVD has incurred significant damages as a proximate result of those false statements and omissions of material fact.

**WHEREFORE**, for Count I, AVD respectfully prays for judgment against all defendants, jointly and severally, for its actual damages in the principal amount of Seven Hundred Fifty Thousand Dollars ($750,000), with interest from and after December 27, 2018 at the contract rate of eight percent (8%) per annum, which totals One Hundred Ninety-Nine Thousand One Hundred Sixty-Six and 67/100 Dollars ($199,166.67) as of April 22, 2022, and continues to accrue at the per diem rate of One Hundred Sixty-Six and 67/100 Dollars ($166.67);

for its legal fees and expenses; for the costs of this action; and for such other and further relief as to this Honorable Court seem meet and just.

**Count II**
**Violation of Kansas Uniform Securities Act**

**COMES NOW** AVD**,** by and through its attorneys, and for Count II of its causes of action against all defendants, jointly and severally, states and alleges as follows:

72.     AVD incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 71 hereof, inclusive.

73.     The Kansas Securities Act, K.S.A. 17-12a101, *et seq*, provides in pertinent part that:

It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:

(1)   To employ a device, scheme, or artifice to defraud;

(2)   To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which it is made, not misleading; or

(3)   To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

K.S.A. 17-12a501.

74.     The Kansas Uniform Securities Act defines a "security" as follows:

(28)   "Security" means a note; stock; treasury stock; security future; bond; debenture; evidence of indebtedness; certificate of interest or participation in a profit-sharing agreement; collateral trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting trust certificate; certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; put, call, straddle, option, or privilege on a security, certificate of deposit, or group or index of securities, including an interest therein or based on the value thereof; put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency; or, in general, an interest or instrument commonly known as a "security"; or a certificate of interest

or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.   The term:

(A)   Includes both a certificated and an uncertificated security;

(B)   does not include an insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or other specified period;

(C)   does not include an interest in a contributory or noncontributory pension or welfare plan subject to the employee retirement income security act of 1974;

(D) includes as an "investment contract" an investment in a common enterprise with the expectation of profits to be derived primarily from the efforts of a person other than the investor. A "common enterprise" means an enterprise in which the fortunes of the investor are interwoven with those of either the person offering the investment, a third party or other investors; and

(E) "investment contract" may include an interest in a limited partnership and a limited liability company and shall include a viatical investment as defined by rule adopted or order issued under this act.

K.S.A. 17-12a102 (28).

75.    The transactions embodied by the Purchase Agreement, First Amendment, Second Amendment and Membership Interest Purchase Agreement constitute the sale of a "security" as that term is defined in the Kansas Uniform Securities Act.

76.    As stated in this Complaint, defendants have employed a device, scheme, or artifice to defraud AVD.

77.    As stated in this Complaint, defendants have made multiple false statement and omissions of material facts.

78.    As stated in this Complaint, defendants have engaged in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person, being AVD.

79.    The (i) employment of a device, scheme or artifice to defraud AVD, (ii) false statements and omissions of material fact, and (iii) acts, practices and course of business that

operates as a fraud or deceit upon AVD, all were intentionally done by defendants with the specific intent to deceive, manipulate and defraud AVD.

80.     AVD justifiably relied on those false statements and omissions of material fact.

81.     AVD has incurred significant damages as a proximate result of the (i) employment of a device, scheme or artifice to defraud AVD, (ii) false statements and omissions of material fact, and (iii) acts, practices and course of business that operates as a fraud or deceit upon AVD.

82.     Defendants , jointly and severally, are liable for AVD's damages pursuant to K.S.A. 17-12a509 (b) and (c).

83.     Defendants are jointly and severally liable for AVD's damages pursuant to K.S.A. 17-12a509 (g)(3).

**WHEREFORE**, for Count II, AVD respectfully prays for judgment against all defendants, jointly and severally, for its actual damages in the principal amount of Seven Hundred Fifty Thousand Dollars ($750,000), with interest from and after December 27, 2018 at the contract rate of eight percent (8%) per annum, which totals One Hundred Ninety-Nine Thousand One Hundred Sixty-Six and 67/100 Dollars ($199,166.67) as of April 22, 2022, and continues to accrue at the per diem rate of One Hundred Sixty-Six and 67/100 Dollars ($166.67); for its legal fees and expenses; for the costs of this action; and for such other and further relief as to this Honorable Court seem meet and just.

**Count III**
**Fraudulent or Negligent Misrepresentation**

**COMES NOW** AVD**,** by and through its attorneys, and for Count III of its causes of action against all defendants, jointly and severally, states and alleges as follows:

84.    AVD incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 83 hereof, inclusive.

85.     The defendants intentionally misled and deceived, or in the alternative negligently misled and deceived, AVD with regard to its investment, is safety, that AVD's investment would be timely repaid or AVD would be placed in a suitable substitute project, and the use of the investment funds solely for authorized purposes as described above.

86.    The representations made by defendants were known to be false by them, or in the alternative defendants failed to exercise reasonable care or competence in making the representations.

87.    The representations were made intentionally or in the alternative negligently for the purpose of inducing AVD to act upon them.

88.    AVD did rely and act upon the representations.

89.    That as a result of the false representations of defendants, AVD has been damaged in the principal amount of Seven Hundred Fifty Thousand Dollars ($750,000), with interest from and after December 27, 2018 at the contract rate of eight percent (8%) per annum, which totals One Hundred Ninety-Nine Thousand One Hundred Sixty-Six and 67/100 Dollars ($199,166.67) as of April 22, 2022, and continues to accrue at the per diem rate of One Hundred Sixty-Six and 67/100 Dollars ($166.67).

90.    Defendants acted in a fraudulent, willful, wanton and malicious manner toward AVD.

**WHEREFORE**, for Count III, AVD respectfully prays for judgment against defendants, jointly and severally, for its actual damages in the principal amount of Seven Hundred Fifty Thousand Dollars ($750,000), with interest from and after December 27, 2018 at the contract

rate of eight percent (8%) per annum, which totals One Hundred Ninety-Nine Thousand One Hundred Sixty-Six and 67/100 Dollars ($199,166.67) as of April 22, 2022, and continues to accrue at the per diem rate of One Hundred Sixty-Six and 67/100 Dollars ($166.67); for punitive damages in an amount that will punish defendants and will deter them and others from engaging in similar conduct; for the costs of this action; and for such other and further relief as to this Honorable Court seem meet and just.

### Count IV
### <u>Fraud Through Silence</u>

**COMES NOW** AVD**,** by and through its attorneys, and for Count IV of its causes of action against all defendants, jointly and severally, states and alleges as follows:

91.     AVD incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 90 hereof, inclusive.

92.     Defendants had knowledge of material facts which AVD did not have and which AVD could not have discovered by the exercise of reasonable diligence as detailed above and reiterated in summary here including:

      a.     That defendants never acquired the land or the leases necessary for the Legacy Shawnee project to proceed;

      b.     That defendants used the investment funds for purposes other than the Legacy Shawnee project;

      c.     That there was litigation concluded, pending and threatened that adversely affected defendants' ability to complete the transaction and provide AVD with the return it was promised;

        d.      That there were adjudicated liabilities of defendants that were not disclosed that adversely affected the defendants' ability to complete the transaction and provide AVD with the return it was promised.

93.      Defendants were under an obligation to communicate those material facts to AVD.

94.      Defendants intentionally failed to communicate those material facts to AVD.

95.      AVD justifiably relied upon defendants to communicate such material facts to it.

96.      As a result of defendants' failure to communicate those material facts, AVD has been damaged in the principal amount of Seven Hundred Fifty Thousand Dollars ($750,000), with interest from and after December 27, 2018 at the contract rate of eight percent (8%) per annum, which totals One Hundred Ninety-Nine Thousand One Hundred Sixty-Six and 67/100 Dollars ($199,166.67) as of April 22, 2022, and continues to accrue at the per diem rate of One Hundred Sixty-Six and 67/100 Dollars ($166.67).

97.      Defendants acted in a fraudulent, willful, wanton and malicious manner toward AVD.

**WHEREFORE**, for Count IV, AVD respectfully prays for judgment against all defendants, jointly and severally, for its actual damages in the principal amount of Seven Hundred Fifty Thousand Dollars ($750,000), with interest from and after December 27, 2018 at the contract rate of eight percent (8%) per annum, which totals One Hundred Ninety-Nine Thousand One Hundred Sixty-Six and 67/100 Dollars ($199,166.67) as of April 22, 2022, and continues to accrue at the per diem rate of One Hundred Sixty-Six and 67/100 Dollars ($166.67); for punitive damages in an amount that will punish defendants and will deter them and others

from engaging in similar conduct; for the costs of this action; and for such other and further relief as to this Honorable Court seem meet and just.

## Count V
### Breach of Contract

**COMES NOW** AVD**,** by and through its attorneys, and for Count V of its causes of action against defendants Lowe, VW and Legacy Shawnee, jointly and severally, states and alleges as follows:

98.     AVD incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 97 hereof, inclusive.

99.     A contract existed between AVD, Lowe, VW and Legacy Shawnee as described in this Complaint, which had sufficient consideration to support it.

100.     AVD has performed in compliance with said contract.

101.     Lowe, VW and Legacy Shawnee have breached their obligations and duties under its contract as described herein.

102.     As a direct result of said breaches, AVD has been damaged in the principal amount of principal amount of Seven Hundred Fifty Thousand Dollars ($750,000), with interest from and after December 27, 2018 at the contract rate of eight percent (8%) per annum, which totals One Hundred Ninety-Nine Thousand One Hundred Sixty-Six and 67/100 Dollars ($199,166.67) as of April 22, 2022, and continues to accrue at the per diem rate of One Hundred Sixty-Six and 67/100 Dollars ($166.67), and its legal fees and expenses.

**WHEREFORE**, for Count V, AVD respectfully prays for judgment against defendants Lowe, VW and Legacy Shawnee, jointly and severally, for its actual damages in the principal amount of principal amount of Seven Hundred Fifty Thousand Dollars ($750,000), with interest from and after December 27, 2018 at the contract rate of eight percent (8%) per annum, which

31

totals One Hundred Ninety-Nine Thousand One Hundred Sixty-Six and 67/100 Dollars ($199,166.67) as of April 22, 2022, and continues to accrue at the per diem rate of One Hundred Sixty-Six and 67/100 Dollars ($166.67); for its legal fees and expenses; for the costs of this action; and for such other and further relief as to this Honorable Court seem meet and just.

**Count VI**
**Breach of Implied Duty of Good Faith and Fair Dealing**

**COMES NOW** AVD**,** by and through its attorneys, and for Count VI of its causes of action against defendants Lowe, VW and Legacy Shawnee, jointly and severally, states and alleges as follows:

103.    AVD incorporates by this reference as if fully set forth in this Count each and all of the allegations contained in paragraphs 1 through 102 hereof, inclusive.

104.    Lowe, VW and Legacy Shawnee have breached their implied duties of good faith and fair dealing as described herein.

105.    As a direct result of those breaches, AVD has been damaged in the principal amount of Seven Hundred Fifty Thousand Dollars ($750,000), with interest from and after December 27, 2018 at the contract rate of eight percent (8%) per annum, which totals One Hundred Ninety-Nine Thousand One Hundred Sixty-Six and 67/100 Dollars ($199,166.67) as of April 22, 2022, and continues to accrue at the per diem rate of One Hundred Sixty-Six and 67/100 Dollars ($166.67).

**WHEREFORE**, for Count VI, AVD respectfully prays for judgment against defendants Lowe, VW and Legacy Shawnee, jointly and severally, for its actual damages in the principal amount of Seven Hundred Fifty Thousand Dollars ($750,000), with interest from and after December 27, 2018 at the contract rate of eight percent (8%) per annum, which totals One Hundred Ninety-Nine Thousand One Hundred Sixty-Six and 67/100 Dollars ($199,166.67) as of

April 22, 2022, and continues to accrue at the per diem rate of One Hundred Sixty-Six and

67/100 Dollars ($166.67); for the costs of this action; and for such other and further relief as to

this Honorable Court seem meet and just.

**Count VII**
**<u>Quantum Meruit</u>**

**COMES NOW** AVD**,** by and through its attorneys, and for Count VII of its causes of

action against all defendants, jointly and severally, states and alleges as follows:

106.    AVD incorporates by this reference as if fully set forth in this Count each and all

of the allegations contained in paragraphs 1 through 105 hereof, inclusive.

107.    AVD made an investment at the special instance of the defendants.

108.    Defendants promised to repay the investment with a return of eight percent (8%)

or transfer ownership in a suitable substitute project to AVD.

109.    Defendants are indebted to AVD in the principal amount of Seven Hundred Fifty

Thousand Dollars ($750,000), with a return on the investment from and after December 27, 2018

at the contract rate of eight percent (8%) per annum, which totals One Hundred Ninety-Nine

Thousand One Hundred Sixty-Six and 67/100 Dollars ($199,166.67) as of April 22, 2022, and

continues to accrue at the per diem rate of One Hundred Sixty-Six and 67/100 Dollars ($166.67).

110.    Despite AVD's demands, defendants have failed and refused to pay the fair and

reasonable value thereof.

**WHEREFORE**, for Count VII, AVD respectfully prays for judgment against all

defendants, jointly and severally, for its actual damages in the principal amount of Seven

Hundred Fifty Thousand Dollars ($750,000), with a return on the investment from and after

December 27, 2018 at the contract rate of eight percent (8%) per annum, which totals One

Hundred Ninety-Nine Thousand One Hundred Sixty-Six and 67/100 Dollars ($199,166.67) as of

33

April 22, 2022, and continues to accrue at the per diem rate of One Hundred Sixty-Six and

67/100 Dollars ($166.67); for the costs of this action; and for such other and further relief as to

this Honorable Court seem meet and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, AVD hereby makes its

demand for a trial by jury of all claims in this action triable to a jury.

## DESIGNATION OF PLACE OF TRIAL

Pursuant to D. Kan. Rule 40.2, AVD hereby requests that the trial of this case be held in

U.S. Courthouse located at U. S. Courthouse, 500 State Avenue, Kansas City, Kansas   66101.


**MURPHY LAW**


By _____
      **MARK D. MURPHY, KS** #13129
      mmurphy@mlf-llc.com
      6640 West 143rd Street, Suite 250
      Overland Park, Kansas   66223
      (913) 600-7913
      Fax (913) 600-7823

      Attorneys for Plaintiff AVD Bellmont LLC

## VERIFICATION

STATE OF _Missouri_

) ss.

COUNTY OF _Cole_ )

    **Veeral Bhoot** being of lawful age, and first duly sworn upon oath, states that he is a Member of AVD Bellmont LLC, the plaintiff in this action, that he has read the foregoing complaint and knows the contents thereof, and that all statements therein made are true.

_Veer Bhee_

**Veeral Bhoot**

    Subscribed and sworn to before me this _22_ day of April 2022.

_Heather Lee Evans_

Notary Public

My Commission Expires:

_2024_

HEATHER LEE EVANS
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
MY COMMISSION EXPIRES NOVEMBER 22, 2024
COLE COUNTY
COMMISSION #20122197